Dear Senator Ferguson:
You have requested our opinion whether the Governor had the authority to approve a memorandum of understanding (the "Memorandum") between the World Health Organization ("WHO") and the Maryland Department of Health and Mental Hygiene ("DHMH"). Our opinion is that the Governor acted within his authority.
 I Background
The World Health Organization was established in 1948 as one of the specialized agencies of the United Nations. Pursuant to a joint resolution of Congress, President Truman accepted membership on behalf of the United States. See 80 Opinions of the AttorneyGeneral ___ (1995) [Opinion No. 95-046 (November 3, 1995)].
The Memorandum was executed on behalf of the State by Governor Glendening and on behalf of DHMH by the Secretary of that Department, Dr. Martin P. Wasserman. It was executed on behalf of WHO by Dr. Michel Jancloes, a senior official of WHO. In Opinion No. 95-046, we concluded that the State's execution of the Memorandum did not violate the federal Constitution.
Under the Memorandum, DHMH will participate in selected public health projects in foreign countries. Memorandum ¶¶ I. 1 and 2. Projects may include the following: health reform policy development and implementation; health care systems reorganization and decentralization strategies; economic analyses of health care financing strategies and financial management protocols; human resource policy development, planning, and management; information management systems development; disease control and immunization strategies; hospital management; health and social dimensions of poverty alleviation efforts; and enhancement and mobilization of health care resource capacity and management of external aid. ¶ I. 1. If DHMH agrees to participate in a project, it is to recommend State employees who wish to serve voluntarily as technical advisers on the project for a short period of time. ¶¶ I. 2 and II. 1. Although such recommendations are subject to WHO approval and the DHMH advisers would work under the direction of WHO officials, the advisers would retain their status as State employees. ¶¶ II. 1a and 2.
 II Governor's Authority
An analysis of the Governor's authority in this situation begins with recognition of the broad authority of the Secretary of Health and Mental Hygiene. Under § 2-102(b)(2) of the Health-General ("HG") Article, Maryland Code, the Secretary is appointed by the Governor to administer DHMH. The Secretary is also directed to "establish general policy for, and adopt standards to promote and guide the development of, the physical and mental hygiene services of this State and its subdivisions." HG § 2-105(a). Furthermore, under HG § 2-105(b) the Secretary has responsibility "for the health interests of the people of this State and shall supervise generally the administration of the health laws of this State and its subdivisions." See 71 Opinionsof the Attorney General 128, 131-32 (1986) (basic health policy is set and administered at the State level).
These provisions supplied ample authority for the Secretary to execute the Memorandum. The DHMH employees who will act as advisers for WHO will gain experience and knowledge about numerous health care issues pertinent to the State and its subdivisions for example, disease control, immunization, and hospital management. The knowledge and experience thus acquired can be applied by the employees to their primary State duties. Thus, the Memorandum advances the health interests of the people of this State.
Because the Secretary had authority to execute the Memorandum, so did the Governor. Under the Constitution, the "executive power of the State" is vested in the Governor. Article II, § 1. This provision is elaborated by statute: "The Governor is the head of the Executive Branch of the State government and, except as otherwise provided by law, shall supervise and direct officers and units in that Branch." § 3-302 of the State Government Article. More specifically, under HG § 2-102(b) the Secretary "serves at the pleasure of the Governor and is responsible directly to the Governor. The Secretary shall advise the Governor on all matters assigned to the Department and is responsible for carrying out the Governor's policies on these matters."
The Governor's authority to exercise personally authority granted by law to subordinates was confirmed by the Court of Appeals in Maryland Classified Employees Ass'n, Inc. v. Schaefer,325 Md. 19, 599 A.2d 91 (1991), cert. denied, 112 S. Ct. 1160
(1992). In that case, the Court held that the Governor had the authority to issue an executive order decreeing the work week to be 40 hours in lieu of the prior 35-hours. 325 Md. at 28. Rejecting the union's argument that the executive order violated the doctrine of separation of powers, the Court wrote as follows:
 [T]he Governor was "specifically authorized, through the legislative grant of authority to the Secretary of Personnel, to control virtually all aspects of employment including the work week for State employees in the Executive branch . . . ." [A]s head of the Executive Branch of government, the Governor was authorized to direct and supervise the officers of that branch, including the Secretary of Personnel who serves at his pleasure.
Id. (quoting circuit court decision). The Court also observed that "the Governor, as head of the Executive Branch, has broad powers with respect to Executive Branch State employees and over the Secretary of Personnel, who exercises his power subject to the Governor and carries out the Governor's policies with respect to personnel matters." 325 Md. at 34.
What the Court said of the relationship between the Governor and the Secretary of Personnel is true here. The Governor was "specifically authorized" to sign the Memorandum "through the legislative grant of authority to the Secretary" to establish health policy and promote health services. Stated differently, the authority vested in the Secretary encompassed responsibility for the health interest of the people of the State; and, because the Secretary is the Governor's appointee, is subject to his direction, and carries out his policies, the Governor was free to act upon that responsibility personally.
 III Conclusion
In summary, it is our opinion that the Governor properly exercised authority under current law when he approved a memorandum of understanding with the World Health Organization.
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Kimberly Smith-Ward Assistant Attorney General
_________________________ Jack Schwartz Chief Counsel Opinions Advice
 *Page 62